UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK F. MAGDLIN, )
          Plaintiff, ) Case No. C08-1560-CRD-BAT
)
v. ) **REPORT AND**
) **RECOMMENDATION**
MICHAEL ASTRUE, Commissioner of the )
Social Security Administration, )
)
          Defendant. )

Plaintiff Mark F. Magdlin seeks judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner"), after a hearing before an administrative law judge ("ALJ"). This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule MJR 4(A)(4) and as authorized by *Matthews v. Weber*, 423 U.S. 261 (1976). Dkt. 16. Plaintiff presents the following issues: whether the ALJ erred in (1) evaluating the medical opinions, (2) evaluating plaintiff's credibility, and (3) determining plaintiff's residual functional capacity. He also asserts that the ALJ displayed bias against plaintiff. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be AFFIRMED and this matter DISMISSED with prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, who is currently 47 years old, has a high school education and training as an auto body technician. Tr. 75. He has past work experience as a groundsman for a tree service

REPORT AND RECOMMENDATION – 1

company and a timber faller. Tr. 70, 479. He was last employed a groundsman in November 1998. Tr. 70.

In November 2004, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability as of November 19, 1998. Tr. 17. His application was denied initially and on reconsideration. Tr. 37-38. After a hearing, the ALJ issued a decision on December 18, 2007, finding that plaintiff was disabled within a closed period from October 31, 2003, through November 1, 2004, but not before or after these dates. Tr. 13-27. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 4-9. Plaintiff now seeks judicial review of the Commissioner's final decision.

## II. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ did not explicitly engage in the eight-step sequential evaluation process to determine whether plaintiff experienced medical improvement that restored his ability to work. *See* 20 C.F.R. § 404.1594. But the ALJ considered the required elements and made specific findings related to this determination.[1]

The ALJ found that plaintiff did not engage in substantial gainful activity after the alleged onset date, November 19, 1998. Tr. 18 (step one under both analyses).

The ALJ found that plaintiff had the medically determinable severe impairment of a back disorder (status-post March 2001 and November 2003 surgeries). The ALJ further found that plaintiff's reported bi-polar disorder and broken left foot were "non-severe" for purposes of the decision. *Id.* (step two of five-step analysis, step six of the eight-step analysis).

The ALJ found that, during the closed period from October 31, 2003, through November 1,

---

[1] Plaintiff does not claim that the ALJ erred in failing to follow this analysis step by step.

2004, plaintiff's severe impairment met or equaled the impairment listed in section 1.04 (disorders of the spine) of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further found that plaintiff had no impairment that met or equaled a listed impairment before or after the closed period. Accordingly, the ALJ found that plaintiff was disabled during the closed period, but that further analysis was required for the time before and after the closed period. Tr. 22 (step three of the five-step analysis, step two of the eight-step analysis).

The ALJ found that plaintiff experienced sufficient medical improvement by November 1, 2004, to allow him to perform at least sedentary work. Tr. 23 (steps three and four of the eight-step analysis[2]).

The ALJ found that before and after the closed period, plaintiff had the residual functional capacity to perform an essentially full range of sedentary work: lifting and carrying up to 10 pounds occasionally and less than 10 pounds frequently, sitting for at least six hours and standing and walking for two to four hours in an eight-hour workday allowing for usual breaks. He should not frequently climb, balance, stoop, kneel, crouch, or crawl, but could perform those postures occasionally. He should avoid concentrated exposure to environmental irritants such as noxious fumes, odors, dusts, and gasses, and to hazards such as working at unprotected heights or near dangerous, moving machinery. Tr. 22-23 (prior to step four of the five-step analysis, step seven of the eight-step analysis).

The ALJ found that plaintiff was unable to return to his past relevant work. Tr. 25 (step four of the five-step analysis, step seven of the eight-step analysis).

Finally, the ALJ found that before and after the closed period, considering plaintiff's residual functional capacity, age, and education, plaintiff was not disabled under Medical-

---

[2] Because the ALJ found medical improvement related to plaintiff's ability to work, no step five finding was necessary as part of the eight-step analysis. *See* 20 C.F.R. § 404.1594(f)(4).

REPORT AND RECOMMENDATION – 3

Vocational Guidelines 201.21, 201.22, 201.28, and 201.29, regardless of whether plaintiff's skills were transferrable. Tr. 25-26 (step five of the five-step analysis, step eight of the eight-step process). The ALJ thus found that plaintiff was not disabled before or after the closed period. Tr. 27.

### III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold. *Id.*

### IV. DISCUSSION

**A.     The ALJ did not err in evaluating the medical opinions**

Plaintiff argues that the ALJ erred in evaluating the opinions of his treating physician and surgeons. He asserts that the ALJ ignored the opinions of Ib R. Odderson, M.D., Ph.D., David C. Primrose, M.D., and Steven S. Ratcliffe, M.D., without providing sufficient reasons for doing so, and that this had the effect of "watering down" the record. Dkt. 13 at 8.

REPORT AND RECOMMENDATION – 4

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating doctor's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where a treating doctor's opinion is contradicted, the ALJ may not reject it without providing "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 f.2d 418, 421-22 (9th Cir. 1988).

**1.    Dr. Odderson**

It appears that Dr. Odderson was plaintiff's treating physician at the time of plaintiff's November 2003 back surgery and provided follow-up care through May 2004. *See generally* Tr. 178-295, 364-69. In March 2006, Merrill A. Cohen, a vocational rehabilitation counselor hired by plaintiff to do a vocational assessment, referred to a December 2004 letter from Dr. Odderson. Tr. 138-39. Ms. Cohen's assessment stated:

> In a December 15, 2004 letter, Ib R. Odderson, M.D., Ph.D., provided the following response to the request to review some job analyses: *"My impression is, as I have stated before in my clinic note, that these two types of jobs are not appropriate for the patient. He does not feel he would be able to carry out either of those two types of jobs due to his back pain, foot drop, and fatigue, and increased risk of falling an inability to carry items. He has also applied for disability through SSDI. . . . In the future, please do not send me any forms, because I believe at the most, he would be able to do part-time desk job or be a*

REPORT AND RECOMMENDATION – 5

> *driver of some type of equipment. He is at risk of falling, due to foot drop and*
> *fatigue and he cannot safely carry items. Again, please accept this letter as the*
> *response to any future job analysis reports you may send."*

*Id.* (emphasis and alteration in original). It appears that neither Dr. Odderson's December 2004 letter nor the request it responds to is in the record.[3] The ALJ did not refer to the letter or Ms. Cohen's report of it, but did refer to Dr. Odderson's post-surgery treatment notes from March through May 2004.[4] Tr. 24, 364-69.

Plaintiff argues that it was error for the ALJ to ignore Dr. Odderson's opinion as reported in Ms. Cohen's assessment. The Commissioner responds that the opinion is not probative because it does not contain the tests, observations, or clinical findings that Dr. Odderson relied on to reach his conclusions, and this information is not located elsewhere in the record.

An ALJ need not discuss all evidence presented; rather, the ALJ need only explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Dr. Odderson's opinion, as reported in Ms. Cohen's assessment, lacks context, refers to information not in the record, and is incomplete. Even presuming that Dr. Odderson's treatment notes from March through May 2004 form the basis for his opinion, the significance of his opinion remains unclear. For example, he appears to opine that plaintiff was unable to perform work above the sedentary level, which is undisputed in this case. This is not the kind of evidence typically considered significant and probative. The ALJ did not err in failing to specifically address Dr. Odderson's opinion as reported in Ms. Cohen's vocational assessment.

---

[3] Both parties cite only to Ms. Cohen's report of this opinion. The Court did not locate the letter elsewhere in the record.

[4] These treatment notes, made during the closed period of disability, are consistent with the ALJ's finding that plaintiff was unable to perform even sedentary work during this time.

REPORT AND RECOMMENDATION – 6

### 2. Dr. Primrose

Dr. Primrose performed emergency surgery on plaintiff's back on November 1, 2003, after plaintiff presented to the emergency room on October 31, 2003 with significant back pain and difficulty urinating. Tr. 231, 238-42, 259-61. Before performing the surgery, Dr. Primrose examined plaintiff and described his condition as: "Gigantic disc extrusion with a cauda equine syndrome. Very high likelihood that he will not make a recovery in some of these losses in bowel and bladder and sexual function, and even the weakness in the feet." Tr. 241.

Plaintiff asserts that the ALJ provided no legitimate basis for ignoring the above-quoted opinion of Dr. Primrose. The Commissioner points out that Dr. Primrose made this observation of plaintiff's condition during the closed period of disability found by the ALJ, arguing that the ALJ necessarily accepted Dr. Primrose's findings, but found later evidence of medical improvement.

The ALJ's decision reflects that he gave great weight to Dr. Primrose's diagnosis of cauna equine syndrome and to his opinion of the severity of plaintiff's condition. The ALJ found that plaintiff's condition, beginning the day plaintiff went to the emergency room, met or equaled the listing for disorders of the spine, rendering plaintiff disabled. But the ALJ was not required to credit a prediction of future functioning that was not borne out by the evidence. Although Dr. Primrose's prognosis at the time of surgery was grave, the record reflects that plaintiff did experience medical improvement beyond that predicted by Dr. Primrose. By May 20, 2004, Dr. Odderson found that plaintiff had "No problems with the bladder." Tr. 364. At a November 10, 2004 medical evaluation, Dr. Bruce Kaler, M.D., noted that plaintiff was not wearing his left leg AFO brace, but was able to perform most walking and balancing tests, dress and undress, get up from a chair, and get on and off the exam table without difficulty. Tr. 392. The ALJ did not improperly ignore Dr. Primrose's November 1, 2003 assessment of plaintiff's condition, nor did

the ALJ err in relying on later evidence to determine plaintiff's condition after having time to heal from the surgery.

### 3. Dr. Ratcliffe

Dr. Ratcliffe performed plaintiff's March 23, 2001 back surgery, and it appears that he treated plaintiff from February 1999 through July 2001. Tr. 293-94; *see generally* Tr. 319-330, 376-89. The ALJ reviewed the course of plaintiff's treatment through this period, finding a general lack of documentary medical records. Tr. 19-20. Plaintiff asserts that the ALJ ignored Dr. Ratcliffe's opinion. But he fails to specify what opinion the ALJ should have considered and what additional limitations Dr. Ratcliffe may have offered. Accordingly, the Court need not consider this argument. *See Carmickle v. Astrue*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

**B.    The ALJ did not err in evaluating plaintiff's credibility**

Plaintiff argues that the ALJ erred in finding plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms less than fully credible with respect to the time before and after the closed period of disability.

Evaluating a claimant's subjective symptom testimony is a two step process. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an underlying impairment or combination of impairments that could reasonably be expected to produce some degree of pain or other symptoms. *Id.* at 1282. Once the claimant has met this test, and if there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Id.* at 1283-84. In considering a claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, including the claimant's reputation for lying, prior inconsistent statements about the symptoms, and other testimony that seems less than

candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities. *Id.* at 1284.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Tr. 24. Specifically, the ALJ found plaintiff's statements credible to the extent he contended he was unable to work during the closed period of disability, but less than fully credible before and after the closed period. Tr. 25.

The ALJ made specific findings giving several clear and convincing reasons for rejecting plaintiff's subjective complaints. The ALJ noted that plaintiff's daily activities included occasionally driving a car, vacuuming, doing the dishes, rarely doing the laundry and some limited cooking, but more often making fishing flies and watching TV for up to six hours a day. Tr. 21. Plaintiff's daily activities also included making coffee, feeding his dogs, and taking a 10-minute walk. Tr. 23. Plaintiff was able to mow the lawn for 45 minutes to an hour each week, with needed breaks. He was able to provide for his own personal care, including taking his medications. And he was able to drive a car for short distances, could go out alone in public, and phoned his family daily. Tr. 21, 24. The ALJ strongly suspected that, if plaintiff spent six hours a day watching TV as reported, he spent most of that duration sitting. Tr. 25. Plaintiff argues that the ALJ penalized plaintiff for attempting to live a normal life in the face of his limitations. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). But contradictions between a claimant's reported activities and his asserted limitations are an issue of credibility. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ's interpretation of plaintiff's daily activities as inconsistent with his reported limitations is a reasonable one that this Court will

uphold.

The ALJ also considered the lack of objective medical evidence or treating source opinions supporting plaintiff's claim of disability before and after the closed period, as well as the frequency and course of plaintiff's treatment. Tr. 23. The ALJ noted that, although plaintiff alleged disability as of November 1998, the medical record did not begin until February 1999, when plaintiff complained of ongoing back pain, which was treated with steroid injections. Tr. 19. In March 2000, plaintiff reported that his back pain "improved with sitting"; his treating physician restricted him from heavy lifting, but did not think surgery would be necessary. Tr. 20. The ALJ found this opinion consistent with the ability to perform sedentary work. Tr. 23. The record was "rather sparse" until March 2001, when plaintiff had his first back surgery. Tr. 23. Following another period with little documentation, in September 2003 plaintiff complained of increasing back pain, and his treating physician advised plaintiff to join an exercise program. Tr. 20. Plaintiff went to the emergency room on October 31, 2003, the date the closed period of disability began. On November 10, 2004, Bruce Kaler, M.D., found plaintiff to be significantly improved neurologically, or "grossly normal," and remarked that his pain symptoms were under control, even though he was not capable of performing physical labor. Tr. 23. On March 5, 2005, a state agency physician assessed plaintiff to be capable of sedentary work. The ALJ found that plaintiff experienced sufficient medical improvement by November 1, 2004 to be capable of performing sedentary work.

Plaintiff also received treatment for bipolar disorder. In August 1999, he reported that he had no symptoms of paranoia, hallucination, or depression, and that he was sleeping well. Tr. 19. He also reported that he was taking no prescribed pain medications at that time. Tr. 20. In June 2002, plaintiff began seeing psychiatrist Lester Sandman, M.D., who adjusted plaintiff's

medications to improve his questionably stable condition. Dr. Sandman reported that plaintiff's mood remained "stable" and "normal" over the next several years. Tr. 20-22. By May 2004, Dr. Sandman characterized plaintiff's bipolar disorder as "in remission" since November 2003, which was when plaintiff had stopped taking lithium. Tr. 21-22. In November 2004, plaintiff again reported that he was not taking prescribed pain medications for his back. In December 2004, plaintiff reported that he continued to see Dr. Sandman only for medication refills. Tr. 21.

An ALJ may not reject a claimant's subjective complaints solely because the objective medical evidence does not corroborate them, but medical evidence is still a relevant factor in determining the severity of a claimant's subjective symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ did not rely solely on the lack of objective evidence, but considered it as a factor. In addition, evidence of conservative or minimal treatment, including a lack of prescribed pain medications, may be a reason to discount a claimant's testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). And medical reports of improvement are also relevant to a credibility determination. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Here, the ALJ found sparse evidence of treatment of plaintiff's back disorder before and after the closed period, and noted that plaintiff reported not taking any prescribed pain medications. In addition, the ALJ noted that plaintiff's bipolar disorder was well-controlled or even in remission with medication. These are clear and convincing reasons to give less weight plaintiff's subjective complaints.

The ALJ also noted that plaintiff made inconsistent statements regarding his drug and alcohol abuse. Plaintiff reported in December 2004 that his alcohol abuse was in remission since 1985 (Tr. 395), but reported "only occasional" use of alcohol in November 2004 (Tr. 390). A claimant's inconsistent reports and lack of candor may support an adverse credibility finding. *See*

REPORT AND RECOMMENDATION – 11

*Smolen*, 80 F.3d at 1284.  The ALJ gave clear and convincing reasons, supported by substantial evidence, for finding plaintiff's subjective complaints before and after the closed period less than fully credible.

**C.      The ALJ did not err in assessing plaintiff's residual functional capacity**

Plaintiff next argues that the ALJ erred in finding that plaintiff had the residual functional capacity to perform sedentary work because the ALJ failed to take into account the effects of plaintiff's bipolar disorder and failed to evaluate plaintiff's capacity to work for a sustained period.

The ALJ considered the effects of plaintiff's bipolar disorder, as discussed above, noting that the evidence showed it was well-controlled and even in remission with medication.  Tr. 23.  Plaintiff, however, asserts that the ALJ should have considered the side-effects of that medication.  The only evidence that plaintiff points to regarding these side effects is his own testimony that the medication makes him tired, with less endurance.  Tr. 494.  But, as discussed above, the ALJ properly found that plaintiff's statements about his subjective symptoms were less than fully credible.  The ALJ did not err in discounting plaintiff's testimony that his bipolar medication causes fatigue.

A claimant's residual functional capacity "is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling 96-8p.[5]  A regular and continuing basis means eight hours a day, for five days a

---

[5] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such courts give such rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v.*

week, or an equivalent work schedule. *Id.* Plaintiff points to nothing in the ALJ's opinion to indicate that the ALJ deviated from the usual meaning of the term. In fact, the ALJ specifically discussed plaintiff's ability to sit and stand during an eight-hour workday. Tr. 22. In assessing plaintiff's residual functional capacity, the ALJ considered all of plaintiff's functional limitations as supported by the medical evidence and the credible subjective complaints. This assessment was not in error.

Plaintiff further argues that the ALJ erred by ignoring the vocational assessment plaintiff submitted. As noted above, Merrill A. Cohen performed a vocational assessment on plaintiff's behalf. Tr. 138-41. Ms. Cohen opined that, if Dr. Odderson's opinion is credited, plaintiff was not capable of working full time. If the opinion of Nathan Barrett, M.D., who evaluated plaintiff in October 2005, is credited, plaintiff would be capable of performing a job that did not require lifting more than 10 pounds and did not require prolonged standing or sitting. Ms. Cohen stated, however, that most sedentary jobs require some basic general office skills, and also require prolonged sitting, although workers may get up periodically. Ms. Cohen did not believe plaintiff was capable of completing a course of post-high school education to provide him the skills necessary for sedentary work. She further believed that plaintiff would not be able to perform any kind of work in a productive manner and at a competitive rate.

Contrary to plaintiff's assertion, the ALJ did in fact discuss Ms. Cohen's report. The ALJ found that Ms. Cohen "essentially appears to understand the evidence in this case, but argues that as the claimant has never before performed 'desk' work, he would require post-high school educations for 'sedentary' work." Tr. 26. The ALJ found that based on plaintiff's age, the Medical-Vocational Guidelines in 20 C.F.R. Pt. 404, Subpt. P, App. 2, direct a finding of "not

---

*Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

disabled" regardless of whether plaintiff has performed that manner of work previously.

At step five of the disability determination process, the issue is whether the claimant can perform a significant number of jobs in the national economy, other than the claimant's past work, considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The Medical-Vocational Guidelines (or "grids") identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983). Where the grids match a claimant's qualifications, they direct a finding of either disabled or not disabled. *See id.* Where the grids do not match a claimant's qualifications exactly, the ALJ can use the grids as a framework to determine whether work exists that the claimant can perform. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

Under the grids, a younger individual (age 18 to 49) with the residual functional capacity to perform sedentary work, a high school education, and skilled or semiskilled work experience is not disabled, whether or not the skills are transferrable. *See* Guidelines 201.21 (age 45 to 49, skills not transferrable), 201.22 (age 45 to 49, skills transferrable), 201.28 (age 18 to 44, skills not transferrable), and 201.29 (age 18 to 44, skills transferrable). Plaintiff was a younger individual throughout the disability period, had a high school education, and past work experience as a timber faller. The vocational expert testified that this job was semiskilled work, but that the skills were not transferrable to less rigorous work. Tr. 503-05.

The girds account for plaintiff's current education level. Ms. Cohen's opinion about further education is not a relevant to a disability determination under the grids. The ALJ did not err in failing to credit Ms. Cohen's opinion that plaintiff would require post-high school education to be able to perform sedentary work.

REPORT AND RECOMMENDATION – 14

**D.    The ALJ did not display bias against plaintiff**

Plaintiff asserts that the ALJ displayed bias against him.  Plaintiff argues that the ALJ's statements about plaintiff driving a truck and working "off the clock" and references to plaintiff's smoking habit, past drug and alcohol use, and criminal history demonstrate the ALJ's hostility towards plaintiff.

The Court presumes that ALJs are unbiased in the conduct of their official duties.  *Rollins v. Massanari*, 261 F.3d 853, 857-858 (9th Cir. 2001).  This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification.  *Id*. at 858 (quoting *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir.1999)).  A plaintiff alleging bias must show actual bias.  *Bunnell*, 336 F.3d at 1114-15.  He must "show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Rollins*, 261 F.3d at 858 (*quoting Liteky v. United States*, 510 U.S. 540, 551 (1994)); *see also Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) ("'Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge' unless 'they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  Plaintiff has pointed to nothing in the record that rises to this high level.

Plaintiff first points to the ALJ's reference to a November 2003 medical report that referred to the patient's work driving a truck. Tr. 18.  The ALJ found that plaintiff's earning records did not corroborate this work and suspected that plaintiff may have been working "off the clock."  Nevertheless, because there was no concrete evidence that plaintiff had worked after his alleged onset date, the ALJ found that plaintiff had not engaged in substantial gainful activity.

It appears that the November 2003 report was erroneously included in the record in this

REPORT AND RECOMMENDATION – 15

case. The report has another individual's name on it, contains a different diagnosis, and describes a different work history. The ALJ's failure to recognize this error does demonstrate bias against plaintiff.

Plaintiff next points to the ALJ's references to his smoking habit, past drug and alcohol abuse, and criminal record. Plaintiff does not specify any particular statements that he alleges showed bias. But, after reviewing the record, the Court does not find any remarks by the ALJ that indicate he was predisposed to rule against plaintiff because of plaintiff's smoking habit, past drug and alcohol abuse, and criminal history.

Based on the record, the Court is unable to conclude that plaintiff has met the high standard to show that the ALJ was biased against him.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED and this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 13th day of August, 2009.

　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　BRIAN A. TSUCHIDA
　　　　　　　　　　　　　　　United States Magistrate Judge

REPORT AND RECOMMENDATION – 16